UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22254-CIV-GAYLES/OTAZO-REYES

EDGINA T. HENDRIX-SMITH,

      *Pro se* Plaintiff,

v.

SANTANDER CONSUMER USA and
PRA RECEIVABLE MANAGEMENT d/b/a
PORTFOLIO RECOVERY,

      Defendants.

_____ /

## REPORT AND RECOMMENDATION RE: MOTIONS TO DISMISS

THIS CAUSE came before the Court upon the following submissions:

1.  Defendant Santander Consumer USA's ("Santander") Motion to Dismiss Plaintiff's Complaint (hereafter, "Santander's Motion to Dismiss") [D.E. 8]; and

2.  Defendant PRA Receivable Management's ("PRM") Motion to Dismiss Complaint (hereafter, "PRM's Motion to Dismiss") [D.E. 10].[1]

These matters (together, "Motions to Dismiss") were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Darrin P. Gayles, United States District Judge [D.E. 43]. For the reasons stated below, the undersigned respectfully recommends that the Motions to Dismiss be GRANTED.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff commenced this action against Santander and PRM (together, "Defendants") on June 1, 2020, to litigate a dispute concerning the title to her 2002 Land Rover Discovery II

---

[1] PRM identifies itself as Portfolio Receivables Management, LLC in its Motion to Dismiss. <u>See</u> PRM's Mot. to Dismiss [D.E. 10 at 1]. The undersigned will continue to refer to it as PRM throughout this Report and Recommendation.

(hereafter, "Vehicle").  See Complaint for Damages (hereafter, "Complaint") [D.E. 1].  Plaintiff attached as exhibits to her Complaint a Power of Attorney Instruction Letter dated April 12, 2011 from Santander and a Note and Security Agreement with Roadloans for the Vehicle.  See Exs. A & B to Compl. [D.E. 1 at 9–13]; see also Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016) ("[A] district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . .") (citation omitted).

As alleged by Plaintiff and shown in Exhibits A & B:

- Plaintiff purchased the Vehicle in November 2006, and financed it through Roadloans.

- Pursuant to the terms of Roadloans' Note and Security Agreement, Plaintiff was required to make 72 monthly payments of $314.04, totaling $22,610.88 (hereafter, the "Loan").

- In or around August or September 2009, Plaintiff's Vehicle was repossessed because she failed to timely make her monthly payments.

- Thereafter, Plaintiff was able to regain possession of the Vehicle.

- Santander assumed the Loan from Roadloans.

- Although Plaintiff claims to have complied with her monthly payments at the time Santander assumed the Loan, "the debt reflected that [P]laintiff owed [the] original amount of [the] [L]oan when it was taken out . . . ."

- Following several telephone communications with Santander, it was determined that the title to the Vehicle had not been transferred back to Plaintiff's name despite Plaintiff completing an initial title transfer form in or around 2009 to 2010.

- On or about April 12, 2011, Plaintiff received a Power of Attorney Instruction Letter from Santander which read:

  This letter is to inform you that when your vehicle was repossessed the motor vehicle title was transferred out of your name and into the name of your lien holder. Since you have reinstated your loan, the title needs to be transferred back into your name in order to comply with the laws of your state.

  Included in the package you will find a Power of Attorney to Transfer Motor Vehicle. Please complete the attached Power of Attorney so that Santander Consumer USA "SCUSA" can facilitate all paperwork to the state. It is very important that you send this document filled out, signed and notarized to SCUSA

as soon as possible. If we do not receive the necessary documentation from you, SCUSA cannot send the documentation to your state to have you listed as the registered owner on the vehicle title. This can lead to your inability for you to renew your tags and legally drive your vehicle.

\*\*\*

Please send back to us in the envelope provided the signed and notarized Power of Attorney, copy of your current driver's license and a copy of your current insurance card so we can begin the process of titling your vehicle back into your name.

- Plaintiff claims that she completed and mailed the Power of Attorney to Santander. However, the title was never transferred back to Plaintiff's name.

- In 2012, Plaintiff filed a petition for bankruptcy in Georgia (hereafter, "Bankruptcy Case").

- According to Plaintiff, Santander failed to comply with bankruptcy laws and sold the Loan to PRM.

- After January 2012, the Loan was no longer reflected on Plaintiff's credit report and has not been so reflected for over nine years.

- Plaintiff claims to have paid approximately $15,072.00 on the Loan through June 2012.

- According to Plaintiff, PRM has admitted to having the title to the Vehicle and has refused to transfer it to Plaintiff for several years.

See Compl. [D.E. 1 at 1–5]; Exs. A & B to Compl. [D.E. 1 at 9–13].

Based on these allegations, Plaintiff asserts the following claims against Defendants:

1. Count I – Violation of the Fair Credit Reporting Act and the Fair Debt Collections Act, Along with Harassment and Abuse of Power.

2. Count II – Violation of the Federal Trade Commission Act Which Prohibits Unfair and Deceptive Business Practices Section 5(a) of the Federal Trade Commission Act (FTC ACT).

See Compl. [D.E. 1 at 5–8].

In their Motions to Dismiss, Defendants argue that: (1) the Complaint constitutes a shotgun pleading; (2) Plaintiff's claims are barred under the applicable statutes of limitations, or alternatively, under the doctrine of judicial estoppel; and (3) Plaintiff has failed to state a claim upon which relief can be granted.  See Santander's Mot. to Dismiss [D.E. 8 at 3–11]; PRM's Mot.

to Dismiss [D.E. 10 at 3–8].  Additionally, PRM argues that "[t]o the extent Plaintiff is attempting

to assert fraud claims (see Compl. ¶¶ 16, 20), such claims must be dismissed because they are not

supported by any factual allegations that would satisfy the essential elements of fraud[;]" and that

"Plaintiff's allegations are generally false[.]"  See PRM's Mot. to Dismiss [D.E. 10 at 7–8].

## STANDARD OF REVIEW

### A.  Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)")

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim

upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "In ruling on a [Rule] 12(b)(6)

motion, the Court accepts the factual allegations in the complaint as true and construes them in the

light most favorable to the plaintiff."  Speaker v. U.S. Dep't of Health & Human Servs. Centers

for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) (citing Hill v. White, 321

F.3d 1334, 1335 (11th Cir. 2003)).  "The Court does not view each fact in isolation . . . but

considers the complaint in its entirety."  Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A.

DE C.V., 155 F. Supp. 3d 1310, 1315 (S.D. Fla. 2016) (citing Tellabs, Inc. v. Makor Issues &

Rights, Ltd., 551 U.S. 308, 322 (2007)).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead 'enough facts to

state a claim to relief that is plausible on its face.'"  Michel v. NYP Holdings, Inc., 816 F.3d 686,

694 (11th Cir. 2016) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim

is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  (quoting

Twombly, 550 U.S. at 556).  While detailed factual allegations are not necessary, "[a] plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 545 (alteration and internal quotation marks omitted) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). "[U]nadorned, the-defendant-unlawfully- harmed-me accusation[s]" are insufficient to state a claim for relief. Iqbal, 556 U.S. at 678.

"[P]ro se pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally." Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir.1998)). However, "[the] [Court] will not serve as de facto counsel or rewrite an otherwise deficient pleading in order to sustain an action." Ward v. Select Portfolio Servicing, Inc. (SPS), 690 F. App'x 649, 650 (11th Cir. 2017) (internal quotation marks omitted) (quoting GJR Invs., Inc. v. Cty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998) (overruled on other grounds)).

### B. Shotgun Pleading

Pursuant to Federal Rule of Civil Procedure 8(a)(2) (hereafter, "Rule 8(a)(2)"), "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading' that violates Rule 8(a)(2)." Auf v. Howard Univ., No. 19-CV-22065, 2019 WL 2231215, at *2 (S.D. Fla. 2019). There are four types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action

> or claim for relief.  Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (footnotes omitted).  "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  Id. at 1323 (footnote omitted).

Dismissal is appropriate when a complaint constitutes a shotgun pleading.  See Wilder v. JP Morgan Chase Bank, N.A., No. 18-CV-20820, 2018 WL 5629922, at *6 n.5 (S.D. Fla. 2018) (citing Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1322 (11th Cir. 2015)).

## APPLICABLE STATUTES

### A.  The Fair Credit Reporting Act ("FCRA")

The FCRA's general purpose is to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. § 1681.  "To achieve its purpose, the FCRA places distinct obligations on three types of entities: consumer reporting agencies ['CRAs'], users of consumer reports, and furnishers of information to consumer reporting agencies."  Chipka v. Bank of Am., 355 F. App'x 380, 382 (11th Cir. 2009) (citing 15 U.S.C. §§ 1681b, 1681m, and 1681s-2).

15 U.S.C. § 1681a provides, in pertinent part:

(c) The term "consumer" means an individual.

(d) Consumer report

    (1) In general

The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—

> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (C) any other purpose authorized under section 1681b of this title.

*** 

(f) The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(c)–(d)(1), (f).

15 U.S.C. § 1681s-2 (hereafter, "Section 1681s-2"), which sets forth the responsibilities of furnishers of information to CRAs, only allows for a private cause of action for violations of Section 1681s-2(b). See O'Loughlin v. Equifax, Inc., 115 F. Supp. 3d 1375, 1377 (S.D. Fla. 2015) ("Section 1681s–2 imposes certain obligations upon furnishers of information. Though § 1681s–2(a) and (b) both enumerate duties of a furnisher, Congress has created a private cause of action only for violations of subsection (b).") (citing Green v. RBS Nat'l Bank, 288 Fed. Appx. 641, 642–43 (11th Cir.2008)). Pursuant to Section 1681s-2(b):

> a furnisher who receives notice from a CRA that a consumer formally disputes (in accordance with § 1681i(a)(2)) either the completeness or accuracy of any information provided by the furnisher to a CRA must: 1) conduct an investigation with respect to the disputed information; 2) review all relevant information provided by the CRA to the furnisher regarding the dispute; 3) report the results of the investigation to the CRA; and 4) report any findings of incompleteness or inaccuracy to all other CRAs to which the information was furnished. A consumer

may dispute "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency." 15 U.S.C. § 1681i.

Allen v. Am. Exp. Co., No. 07-CV-60338, 2007 WL 2113622, at *2 (S.D. Fla. 2007); see also

Costanzo v. Bank of Am., N.A., No. 07-CV-80044, 2007 WL 9701651, at *2 (S.D. Fla. 2007)

(Section 1681s-2(b) "requires that, upon receipt of a notice of dispute from a [CRA], a furnisher

of information is required to conduct an investigation, review relevant information, and accurately

report the results of the investigation to all agencies to whom the furnisher reports such

information.") (citing Young v Equifax Credit Info. Serv., 294 F.3d 631 (5th Cir. 2002)).

### B. The Fair Debt Collection Practices Act ("FDCPA")

The FDCPA "prohibits debt collectors from engaging in abusive, deceptive, or unfair debt

collection practices." Riley v. Home Retention Servs., Inc., No. 14-CV-20106, 2014 WL

11906643, at *3 (S.D. Fla. 2014) (citing 15 U.S.C. §§ 1692–1692p). To state a claim under the

FDCPA, Plaintiff must adequately allege that: "(1) the plaintiff has been the object of collection

activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA,

and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Rivas v.

Levine Law Grp., No. 15-CV-21351, 2015 WL 5097119, at *2 (S.D. Fla. 2015) (quoting Kaplan

v. Assetcare, Inc., 88 F.Supp.2d 1355, 1360–61 (S.D. Fla. 2000)).

Section 1692a of the FDCPA provides, in pertinent part:

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment*.

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or due another*. Notwithstanding the exclusion provided by clause (F) of the last sentence of this

paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. . . .

15 U.S.C. § 1692a (emphasis added). Additionally, Section 1692d of the FDCPA states that:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(1)** The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

**(2)** The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

**(3)** The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

**(4)** The advertisement for sale of any debt to coerce payment of the debt.

**(5)** *Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.*

**(6)** Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d (emphasis added).

### C. The Federal Trade Commission Act ("FTCA")

"The Federal Trade Commission Act prohibits "unfair or deceptive acts or practices in or affecting commerce." Fed. Trade Comm'n v. Vacation Commc'ns Grp., LLC, No. 13-CV-789, 2014 WL 12823960, at *7 (M.D. Fla. 2014). However, there is no private cause of action for violations of the FTCA. See Lingo v. City of Albany Dep't of Cmty. & Econ. Dev., 195 F. App'x 891, 894 (11th Cir. 2006) ("There is no private cause of action implied under the Federal Trade

Commission Act.") (citing <u>Roberts v. Cameron-Brown Co.</u>, 556 F.2d 356, 361 n.6 (5th Cir. 1977));

<u>O'Connor v. Extra Space Storage Corp.</u>, No. 19-CV-3262, 2019 WL 6498819, at *2 (D.D.C. 2019)

("the Federal Trade Commission Act plaintiff has invoked is 'enforced exclusively' by the

Federal Trade Commission, and it 'does not provide for a private cause of action.'") (quoting

<u>Samuel v. Wells Fargo & Co.</u>, 311 F. Supp. 3d 10, 20 (D.D.C. 2018)).

## <u>DISCUSSION</u>

As noted above, Defendants argue that dismissal of the Complaint is appropriate because:

(1) the Complaint constitutes a shotgun pleading; (2) Plaintiff's claims are barred under the

applicable statutes of limitations, or alternatively, under the doctrine of judicial estoppel; and (3)

Plaintiff has failed to state a claim upon which relief can be granted.  <u>See</u> Santander's Mot. to

Dismiss [D.E. 8 at 3–11]; PRM's Mot. to Dismiss [D.E. 10 at 3–8].  PRM also challenges the

sufficiency and veracity of Plaintiff's fraud allegations.

   1.   *<u>Whether the Complaint constitutes a shotgun pleading.</u>*

PRM argues that the Complaint constitutes a shotgun pleading because "Count I of the

Complaint alleges multiple claims within a single Count" and the Complaint "also alleges multiple

claims and counts against . . . Defendants without clearly specifying which of the Defendants are

responsible for which acts, or which of the Defendants the claim is brought against."  PRM's Mot.

to Dismiss [D.E. 10 at 4].

PRM is correct that the Complaint fails to comply with Rule 8(a)(2)'s pleading

requirements, and as a result constitutes a shotgun pleading, because: Count I commingles claims

brought pursuant to the FCRA and the FDCPA; and Counts I and II do not specify which

Defendant the claims are being brought against and contain allegations which do not specify which

Defendant is responsible for the acts or omissions set forth therein. <u>See</u> Fed. R. Civ. P. 8(a)(2); <u>Weiland</u>, 792 F.3d at 1321–23; Compl. [D.E. 1 at 5–8; ¶¶ 22–23, 28–30].

Therefore, the undersigned concludes that the Complaint is a shotgun pleading and recommends that it be dismissed on this basis. For the sake of completeness, the undersigned addresses below Defendants' additional arguments.

    2.   <u>*Whether Plaintiff's claims are time-barred or barred by judicial estoppel*</u>.

    a.   <u>Statute of limitations</u>

Defendants argue that Plaintiff's FCRA and FDCPA claims, as asserted in Count I, are time-barred. <u>See</u> Santander's Mot. to Dismiss [D.E. 8 at 3–5]; PRM's Mot. to Dismiss [D.E. 10 at 6].

"A FCRA action is timely if it is filed within two years after the date the plaintiff discovered the violation or five years after the date on which the violation occurred, whichever is earlier." <u>Solis v. CitiMortgage, Inc.</u>, 700 F. App'x 965, 970 (11th Cir. 2017) (citing 15 U.S.C. § 1681p). Plaintiff alleges that Santander "failed to reply to Bankruptcy debt notification back in 2012 which is a violation of the [FCRA]." <u>See</u> Compl. [D.E. 1 ¶¶ 17–25]. This date falls outside of the FCRA's five-year statute of limitations; therefore, Plaintiff's FCRA claim against Defendants is time-barred and subject to dismissal with prejudice. <u>Solis</u>, 700 F. App'x at 970.

"The FDCPA requires that suit be filed 'within one year from the date on which the violation occurs.'" <u>Perez v. Bureaus Inv. Grp. No. II, LLC</u>, No. 09-CV-20784, 2009 WL 1973476, at *2 (S.D. Fla. 2009) (quoting 15 U.S.C. § 1692k(d)). With respect to her FDCPA claim, Plaintiff alleges that "[D]efendants continue to call [Plaintiff's] home daily." <u>See</u> Compl. [D.E. 1 ¶ 23]. Accepting that allegation as true, it cannot be said that Plaintiff failed to file suit within one year from the date on which the FDCPA violation occurred. <u>Perez</u>, 2009 WL 1973476, at *2.

b.   Judicial Estoppel

Santander argues that, "[t]o allow Plaintiff's untimely and meritless claims to proceed, despite said claims having allegedly accrued well before the filing of Plaintiff's [Bankruptcy Case], would be both inequitable and a misuse of judicial resources.  Accordingly, Plaintiff's claims against Santander must be dismissed on the basis of judicial estoppel."  See Santander's Mot. to Dismiss [D.E. 8 at 7].

"Judicial estoppel is an equitable concept invoked at a court's discretion" and designed "to prevent the perversion of the judicial process."  Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1271 (11th Cir. 2004) (internal quotation marks omitted) (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002), overruled on other grounds by Slater v. United States Steel Corp., 871 F.3d 1174 (11th Cir. 2017)).

In order to determine whether judicial estoppel is appropriate, "the Court must take into account matters outside of the pleadings, including the bankruptcy court records and presumably testimonial evidence from Plaintiffs in order for the Court to make this determination."  Allen v. Senior Home Care, Inc., No. 14-CV-81408, 2015 WL 1097408, at *2 (S.D. Fla. 2015) (footnote omitted); see also Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273 (11th Cir. 2010) (setting forth the factors which the court must consider when determining whether judicial estoppel is appropriate).  However, such evidence cannot be considered at the motion to dismiss stage.  Id. ("Simply put, the Court cannot make these findings or consider such evidence at the motion to dismiss stage.").  Accordingly, the undersigned finds that Santander's judicial estoppel argument is premature.

3.   *Whether Plaintiff failed to state a claim upon which relief could be granted.*

Defendants argue that the Complaint fails to adequately plead claims under the FCRA,

12

FDCPA, and FTCA.

     a.  The FCRA claim

Plaintiff alleges that:

> [Santander] was aware and notified of [the Bankruptcy Case] back in 2012, yet
> [Santander] failed to either update and reflect these changes in circumstances and
> allegedly sold debt to [PRM] after this Bankruptcy, and [Santander] failed to reply
> to Bankruptcy debt notification back in 2012 which is a violation of the [FCRA].

> Furthermore, [Santander] provided the alleged debt collectors with inaccurate
> financial information on the balance of the account, which was again, deliberate
> and an attempt to make plaintiff pay more money that again, was not owed.

Compl. [D.E. 1 ¶¶ 18–19]. Liberally construing the Complaint, it appears that Plaintiff is challenging Santander's actions as a furnisher of information to CRAs. However, the Complaint is devoid of any allegations establishing PRM as either a CRA, user of consumer reports, or furnisher of information to CRAs and, as a result, fails to state a claim under the FCRA against PRM. See id. ¶¶ 17–25; Chipka, 355 F. App'x at 382; 15 U.S.C. § 15 U.S.C. §§ 1681a(d)(1), (f) and 1681s-2.

Plaintiff's FCRA claim against Santander also fails to allege that Santander: received notice from a CRA that Plaintiff formally disputed either the completeness or accuracy of any information provided by it to a CRA; failed to conduct an investigation with respect to the disputed information; failed to report the results of the investigation to the CRA; and failed to report any findings of incompleteness or inaccuracy to all other CRAs to which the information was furnished. Allen, 2007 WL 2113622, at *2; Costanzo, 2007 WL 9701651, at *2.

     b.  The FDCPA claim

Plaintiff alleges that:

> [D]efendants continue to call the [P]laintiff's home daily regarding this old debt . .
> . .

> The harassing phone calls regarding [the Loan] are illegal and the alleged collection agencies have no legal standing as it relates to this alleged debt.  It is to [P]laintiff's information and belief that [Santander] deliberately kept [P]laintiff's [Vehicle] title and may have not even had legal standing either based upon the fact that in 2012, plaintiff filed Chapter 13 Bankruptcy and [Santander] was not able to validate the [Loan], yet after this Bankruptcy filing, Santander sold the [Loan] to [PRM], which is also illegal.

Compl. [D.E. 1 ¶¶ 23–24].

Plaintiff's FDCPA claim fails to sufficiently plead that the Loan constitutes a debt or that Defendants qualify as debt collectors as defined by Section 1692a of the FDCPA.  See Rivas, 2015 WL 5097119, at *2; Williams v. Edelman, No. 05-CV-60653, 2005 WL 8154686, at *4 (S.D. Fla. 2005) ("To this end, courts have consistently required that plaintiffs prosecuting FDCPA claims demonstrate that the underlying property giving rise to the debt relates to personal, family or household purposes; alternatively stated, the debt may not arise from a primarily business purpose.") (citing Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872, 874 (7th Cir. 2000)); Kurtzman v. Nationstar Mortg. LLC, 709 F. App'x 655, 659 (11th Cir. 2017) ("[A] debt purchaser . . . may indeed collect debts for its own account without triggering the [FDCPA.]") (alterations in original) (quoting Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1721–22, 198 L. Ed. 2d 177 (2017)).

Additionally, Plaintiff's conclusory allegation that the daily phone calls she received concerning the Loan were "harassing" is insufficient under Rule 8(a)(2).  See Ashcroft, 556 U.S. at 678; see, e.g., Bancroft v. Afni Inc., No. 12-CV-1499, 2013 WL 3791465, at *5 (N.D. Ohio 2013) ("daily calls do not rise to the level of harassment under 15 U.S.C. § 1692d."); Saltzman v. I.C. Sys., Inc., No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. 2009) ("The determination of whether a debt collection agency's telephone calls amount to 'actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls.'") (quoting Akalwadi

14

v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 505 (D. Md. 2004)); Beeders v. Gulf Coast Collection Bureau, 796 F. Supp. 2d 1335, 1337 (M.D. Fla. 2011) ("In determining liability under FDCPA Section 1692d(5), courts often consider the volume and pattern of calls made to the debtor.").

      c.  The FTCA claim

As the basis for her FTCA claim, Plaintiff alleges that Defendants "are guilty of using deceptive business practices in an effort to steal [the] . . . title to her [Vehicle] . . . ." Compl. [D.E. 1 ¶ 28]. Given that there is no private cause of action for violations of the FTCA, this claim is subject to dismissal with prejudice. Lingo, 195 F. App'x at 894; O'Connor, 2019 WL 6498819, at *2.

As noted above, PRM also challenges the sufficiency and veracity of Plaintiff's fraud allegations. Notwithstanding the mootness of this argument, it is worth noting that, on a motion to dismiss, the Court must accept the factual allegations in the complaint as true. See Speaker, 623 F.3d at 1379 (citing Hill, 321 F.3d at 1335).

## RECOMMENDATION

Based on the foregoing considerations, the undersigned **RESPECTFULLY RECOMMENDS** that the Motions to Dismiss [D.E. 8, 10] be **GRANTED** as follows:

1. Plaintiff's FCRA and FTCA claims be **DISMISSED WITH PREJUDICE**; and

2. Plaintiff's FDCPA claim be **DISMISSED WITHOUT PREJUDICE** with leave to refile, correcting if possible the pleading deficiencies identified in this Report and Recommendation.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles. Failure to timely file objections shall bar the parties from attacking on appeal the factual

findings contained herein.  See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144,

1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.]

§ 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-

to factual and legal conclusions."  See 11th Cir. R. 3-1 (I.O.P. - 3).

  RESPECTFULLY  SUBMITTED  in  Chambers  at  Miami,  Florida  this  16th  day  of

February, 2021.

             _____
             ALICIA M. OTAZO-REYES
             UNITED STATES MAGISTRATE JUDGE

Copies via CM/ECF to:
United States District Judge Darrin P. Gayles
Counsel of Record

Copies via U.S. mail to:
Edgina T. Hendrix-Smith
15 N.W. 204th St.
Miami, FL 33169